**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY | Case No. 23-cv-3126-JMC |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE** |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | |
| Defendants, | |

## I.    INTRODUCTION

This case involves leases acquired by Plaintiff Alaska Industrial Development and Export Authority ("AIDEA") in the first-ever oil and gas lease sale for the Arctic National Wildlife Refuge in Alaska, which were later cancelled by the U.S. Department of the Interior after multiple court rulings made clear that the decision establishing the Arctic Refuge oil and gas program would not survive legal review.  To properly align this case with multiple pending lawsuits in the District of Alaska relating to that program, including one that AIDEA itself filed with various Alaska co-plaintiffs, Defendants brought a Motion to Transfer Venue (ECF No. 7) from this Court to the United States District Court for District of Alaska.

In opposing the Motion (ECF No. 10), AIDEA emphasizes the purported personal involvement of the Secretary of the Interior in the decision to cancel AIDEA's leases but its arguments here are based largely on a press release announcing the decision.  AIDEA also emphasizes the national interest in protecting the environmental values of the Arctic Refuge, but that interest is in stark tension with AIDEA's desire to develop the cancelled leases.  And while AIDEA claims the pending Alaska cases bear only marginal connection to this case, in reality,

1

the District of Alaska has already addressed (and rejected) fundamental elements of AIDEA's DC-filed complaint.  AIDEA, in short, is forum shopping in the District of Columbia, where a ruling contradicting the Alaska court is not only possible but a key element of AIDEA's strategy. And while AIDEA expounds at length to mischaracterize the pending Alaska cases and analogize to a handful of distinguishable instances where this Court declined to transfer venue, it ignores a critical distinction – AIDEA has ties only to Alaska, and none to the District of Columbia.  AIDEA's fidelity to its statutorily prescribed purpose of generating economic development for Alaska only reaffirms the propriety of this particular case being heard in Alaska.  For all of these reasons, the Court should grant Defendants' motion and transfer this case to the District of Alaska.

## II.      ARGUMENT

The parties seemingly agree on the legal framework for evaluating a motion to transfer. *Compare* Defs.' Mem. in Supp. of Mot. to Transfer 6-7, ECF No. 7 ("Defs.' Mot."), *with* Plaintiff's Opp'n to Defs.' Mot. to Transfer 4-5, ECF No. 10 ("Pl.'s Opp'n").  And the parties agree on the threshold finding that this case could have been brought in federal court in either the District of Alaska or the District of Columbia.  *See* Pl.'s Opp'n 4.  The argument thus primarily focuses on certain public interest factors, including the relation of this case to the pending Alaska cases and whether cancellation of AIDEA's leases primarily implicates national interests or largely involves local considerations that should be decided in Alaska.  Additionally, AIDEA relies heavily on the private interest factors that lease cancellation occurred in the District of Columbia and that its choice of forum is entitled to strong deference.  *See id.* 5-9.  Ultimately, these factors all support transfer and particularly so given the unique circumstances of this dispute.

2

A.      **The Public Interest Factors Strongly Favor Transfer**

      1.      <u>Pendency of Related Actions in Alaska</u>

AIDEA is correct that Defendants "move[ ] for transfer primarily based on the
relationship between this case" and cases pending in the District of Alaska.  Pl.'s Opp'n 14.
AIDEA, thus, tries to downplay that relationship, including by referring to the Alaska cases as
"previous" cases, contending that they involve different agency actions, *id*. 15-19, and
contending that this case raises issues "unique" to lease cancellation, *id*. 20-24.  But these
distinctions misstate the status of the *ongoing* Alaska cases and obscure the fact that AIDEA's
case here is built upon the hope of obtaining rulings that squarely contradict the Alaska court on
key interpretations of the Tax Act Cuts and Jobs Act of 2017 ("Tax Act").  Transfer here would
serve the public interest and steer wide of AIDEA's gambit.

      None of the Alaska cases are "previous" cases, but instead all remain pending.  AIDEA
here attempts to characterize the case challenging lease suspension as singularly its own and one
that has been resolved.  But in reality, that case involves parties other than AIDEA.  *See* Defs.'
Mot. 5 (explaining that AIDEA's pending case involves it and co-plaintiffs North Slope
Borough, Arctic Slope Regional Corporation, Kaktovik Iñupiat Corporation, and intervenor-
plaintiff State of Alaska).  And that case remains pending, as a result of Plaintiffs' motions to
forestall (or modify) entry of final judgment under Federal Rules of Civil Procedure 59 and 60,
which AIDEA here correctly notes are "fully briefed and pending" in the Alaska district court.
*See* Pl.'s Opp'n 19 n.45.  On this point, AIDEA plays fast and loose in this Court, suggesting its
own Alaska case has been resolved when in plain fact, it has not.  And even if AIDEA's and its
Alaska co-plaintiffs' case was resolved (it is not), there remain the four 2020 cases challenging
the validity of the entire Arctic Refuge oil and gas program, under which AIDEA's since-

cancelled leases were issued.[1]

The fact that these four cases challenging the underlying program remain pending is far from trivial.  Fundamental to AIDEA's challenge to lease cancellation filed in this Court is the contention that Defendants have concocted fears about the validity of AIDEA's leases through political pretext or subterfuge.  *See* Pl.'s Opp'n 3-4.  But AIDEA ignores the reality that the underlying 2020 decision authorizing the Arctic Refuge oil and gas program cannot realistically be defended.  In fact, the National Environmental Policy Act ("NEPA") analysis of the Refuge program was built from the same template as other Interior decisions relating to oil and gas development of Alaska's North Slope, or offshore lands adjacent thereto.  The Ninth Circuit ruled in *Center for Biological Diversity v. Bernhardt*, 982 F.3d 723 (9th Cir. 2020) ("*Liberty*"), that this template was flawed because it failed to quantify downstream greenhouse gas emissions from proposed oil and gas development or explain why such quantification was not possible.  *Id.* at 738-40.  AIDEA purports to advise Interior how it can now explain why the 2020 Arctic Refuge analysis should be distinguished from the Ninth Circuit's decision in *Liberty*.  *See* Compl. ¶ 57; *see also id.* ¶¶ 58-59 (alleging that concerns about impacts to subsistence uses were unfounded and that Interior illegally changed positions in recognizing the invalidity of the decision establishing the program).  But AIDEA fails to address, or even acknowledge, that the Alaska district court rejected these (and other) arguments when it extended *Liberty* to invalidate an *onshore* oil and gas project in the National Petroleum Reserve in Alaska ("NPR-A") that was built from Interior's same 2020 NEPA template.  *See Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 555 F. Supp. 3d 739, 762-67 (D. Alaska 2021).  In sum, AIDEA's case depends on the flawed premise that the 2020 decision authorizing its leases was valid, when

---

[1]      *See* Defs.' Mot. 1 n.1 (providing citations to the five pending Alaska cases).

Interior, following *Liberty* and *Sovereign Iñupiat*, has reached the inevitable conclusion that it was not.

AIDEA tries to downplay any overlap or risk of inconsistent rulings in this case and pending Alaska cases by citing two cases.  *See* Pl.'s Opp'n 15.  Both are plainly distinguishable.  First, AIDEA cites *Defenders of Wildlife v. Salazar*, Nos. CV 12-1833 (ABJ), CV 12-1965 (ABJ), 2013 WL 12316872 (D.D.C. Apr. 11, 2013), for the proposition that "litigation in another forum . . . is only one factor affecting the [transfer] analysis."  *Id*. at *5.  But *Defenders* involved "the pendency of a similar action in the District of Wyoming" and the Wyoming court had not "yet opined on the state's newly enacted wolf management statutes" at issue.  *Id*. at *4-5.  *Defenders* thus involved two cases on parallel tracks creating the risk that a similar question might be put to two different courts at approximately the same time.  And five of the six *Defenders* plaintiffs had offices in the District of Columbia, including headquarters of the lead plaintiffs.  *Id*. at *3.  The *Defenders* court therefore found dispositive plaintiffs' choice to bring suit in their home venue and "the significant national interests implicated by gray wolf *preservation*[.]"  *Id*. at *5 (emphasis added).  AIDEA fits neither consideration – it only seeks to reinstate its 2021 leases rather than addressing the underlying oil and gas program, and its choice of forum warrants little deference when it has ties solely to Alaska.  *See* Defs.' Mot. 13-14.  So too is the case with *Fund for Animals v. Norton*, 352 F. Supp. 2d 1 (D.D.C. 2005), which also involved "cases proceed[ing] on a parallel track" rather than a new case filed in the District of Columbia seeking different answers on common legal questions provided in the earlier filed Alaska case.  *Id*. at 2.  And *Fund for Animals* turned in large part on the District of Columbia court's "long history with the facts and law surrounding this case and the prior litigation" and need to interpret and apply "a series of extensive opinions and orders" previously issued by the

that court.  *Id*.  This Court has no such history with litigation involving the Arctic Refuge oil and gas program, but the Alaska court *does*, and that history weighs heavily in favor of allowing all of these interrelated cases to be heard in the District of Alaska.

Finally, AIDEA stresses the fact that its District of Columbia suit challenges the lease cancellation decision while its Alaska suit challenges the lease suspension decision.  *See* Pl.'s Opp'n 15-24.  This is a true statement in terms of abstract jurisdiction but ignores the practical overlap of the cases.  In making its argument AIDEA admits "there may be some limited overlap in legal issues between the present suit and the earlier suit," but it urges that the instant case "presents . . . the yes/no question of whether DOI erred in its earlier [2020 program] analysis, while the earlier case presented the different question of whether DOI's concerns justified a pause in program activities while DOI considered whether or not it had erred."  *Id*. at 21-22.  The distinction is immaterial because the Alaska court addressed the former question in resolving the latter to find that suspending the leases was not arbitrary or capricious.  *See Alaska Indus. Dev. & Exp. Auth. v. Biden*, __ F. Supp. 3d __, No. 3:21-cv-00245-SLG, 2023 WL 5021555, at *19-23 (D. Alaska Aug. 7, 2023) ("*AIDEA*").  And even if one accepts this is "limited overlap in legal issues" it is overlap on a foundational element of AIDEA's challenge to lease cancellation. AIDEA's "different decisions" argument thus fails when it becomes apparent that AIDEA intends to seek a different decision from this Court on the same question already addressed by the Alaska court.  This overlap and the Alaska court's significant familiarity should "weigh heavily in favor of transfer" to the District of Alaska.  *Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 (D.D.C. 2010); *Seafreeze Shoreside Inc. v. U.S. Dep't of the Interior*, Nos. 21-CV-3276 (CRC), 22-cv-237 (CRC), 2022 WL 3906934, at *6 (D.D.C. June 27, 2022).

6

In sum, these are not simply parallel cases addressing a single agency decision in different districts.  Instead, there is years-running and continuing litigation in the District of Alaska that significantly relates to issues that AIDEA seeks to litigate in this Court.  AIDEA's choice to file this new lawsuit in the District of Columbia invites a ruling from this Court on issues already addressed in the pending Alaska litigation, poses a likelihood of inconsistent rulings, and might alter the procedural trajectory of the 2020 Alaska cases.  These reasons all support transfer.

        2.      The Local Interest in Deciding this Case Alongside the Others in Alaska

AIDEA also contends this case does not raise a local controversy that should be decided at home in Alaska but implicates the Arctic Refuge which is "unquestionably of national rather than just local significance."  Pl.'s Opp'n 10-11.  But again, any national interests relating to the Refuge are implicated in the pending Alaska cases, not the instant case through which AIDEA simply seeks reinstatement of its 2021 leases.

AIDEA contends that "[c]ourts in this District have repeatedly rejected" transfer under the local controversy factor "when the case presents issues of federal, rather than state or local, law and when the federal land unit is of national significance, rather than just of local interest."  Pl.'s Opp'n 10.  But AIDEA's cases are again distinguishable.  Particularly so is *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000).  While AIDEA relies on that case, *see* Pl.'s Opp'n 10, it fails to address Defendants' discussion identifying several key factors that cut the other way in this case, *see* Defs.' Mot. 12.  That case centered on controversy over whether to allow oil and gas leasing in the NPR-A and the proper balance between resource conservation and petroleum development "in a manner consistent with the total energy needs of the Nation."  *The Wilderness Soc'y*, 104 F. Supp. 2d at 13.  AIDEA asserts that any case is nationally

significant simply by occurring within a nationally significant land unit, but this is incorrect because it is the *controversy* that must be nationally significant to override the interest in having local controversies decided at home.  And AIDEA's desire to reinstate seven leases implicates only the State of Alaska's economic interests.  Indeed, AIDEA could not weigh in on matters of national policy through its litigation because it lacks any such statutory authority – it "is a public corporation and body politic owned by the State of Alaska and operates *solely to promote economic development and public welfare* in the State."  Pl.'s Opp'n 2 (emphasis added).  Any nationally significant issues relating to the Refuge are presented in the pending Alaska cases, not this one.  Moreover, *The Wilderness Society* did not involve pending cases in Alaska, and plaintiffs there all had ties to the District of Columbia.  *The Wilderness Soc'y*, 104 F. Supp. 2d at 14.

Subsequent cases amplify these distinctions.  While there may be "national policies at play" involving the Refuge, "there is no national interest in the [leases] of th[is] particular plaintiff[ ]."  *See Raju v. Jaddou*, No. 22-CV-02308 (APM), 2023 WL 5321888, at *3-4 (D.D.C. Apr. 7, 2023) (transferring case involving plaintiffs' immigration applications despite national interest in immigration policies, and noting "Plaintiffs do not have ties to the District of Columbia"); *Alabrash v. U.S. Dep't of Homeland Sec.*, No. CV 22-1875 (CKK), 2022 WL 16948559, at *4 (D.D.C. Nov. 15, 2022) (distinguishing *The Wilderness Society* because "Plaintiff does not have similar ties to the District of Columbia nor does Plaintiff's Complaint implicate issues of national scope."); *Niagara Pres., Coal., Inc. v. FERC*, 956 F. Supp. 2d 99, 108 (D.D.C. 2013) (finding *The Wilderness Society* to be "in stark contrast to the instant matter, where the only nexus to the District of Columbia" is the location of the decision-making federal agencies).

Plaintiff's best case would appear to be *Wilderness Workshop v. Harrell*, No. CV 23-678 (JMC), 2023 WL 3879505 (D.D.C. June 8, 2023), where this Court denied a motion to transfer a dispute about access to a private inholding within the White River National Forest to the District of Colorado.  There, the "substance of the Complaint" was whether "a key provision of the Alaska National Interest Lands Conservation Act (ANILCA) – a federal statute that the Forest Service interpreted to apply to all lands in the National Forest System, and thus to require improved access to [plaintiff's] property in Colorado – applies only to National Forest Service lands in Alaska."  *Id*. at *2.  And federal defendants made several arguments that Defendants make here, characterizing the challenged agency decision "as a land management decision about land in Colorado" and emphasizing "that both Plaintiff-organizations are headquartered in Colorado."  *Id*. at *3.  The Court rejected those arguments, because the "threshold" statutory interpretation question had "the potential to affect the administration of national forests throughout the country."  *Id*. (citing *The Wilderness Soc'y*, 104 F. Supp. 2d at 13).  And that is the key difference distinguishing this case.  The instant dispute will not address issues involving a nationwide system of lands.  At most, AIDEA seeks to revisit interpretation of Section 20001 of the Tax Act, which only applies to the Arctic Refuge in Alaska.

While certain statutory purposes or Refuge-related issues may involve national concerns, AIDEA's narrow socioeconomic interests in lease development do not.  AIDEA's challenge to cancellation of its 2021 leases is a localized controversy that should be decided in Alaska.

**B.**     **AIDEA's Private Interest Factor Arguments Do Not Change the Outcome**

AIDEA stresses two private interest factors in opposing transfer – the plaintiff's choice of forum and where the claim arose.  *See* Pl.'s Opp'n 5.  AIDEA's argument is tainted by the mistaken assertion that "[a] key feature of this case" is that Secretary of the Interior Haaland

"personally made and explained the decision to cancel AIDEA's leases." Pl.'s Opp'n 5. This assertion is based on a statement in a press release and AIDEA's misunderstanding of delegation of authority within the Department of the Interior. Regardless, Interior officials working in Washington, D.C. were certainly involved in reviewing and ultimately approving the lease cancellation decision, but courts often discount similarly routine levels of involvement in finding that transfer to the localized nexus of the controversy is warranted. *See* Defs.' Mot. 14-15. And AIDEA overstates the meaning of its own choice of forum here, conspicuously ignoring the fact that in its lease suspension case that more directly involved the President, the Secretary, and suspension of the entire Arctic Refuge oil and gas program, AIDEA and its co-plaintiffs filed in their home forum in Alaska.

    1.    <u>AIDEA's Choice of Forum is Not Entitled to Deference</u>

AIDEA starts with the proposition that a plaintiff's choice of forum "is presumptively accorded deference if facts giving rise to the case occurred in that forum." Pl.'s Opp'n 5 (citing *In re Air Crash over the S. Indian Ocean on Mar. 8, 2014*, 946 F.3d 607 (D.C. Cir. 2020). But even that case explains that "the precise degree of deference afforded a plaintiff's forum choice varies depending on the plaintiff's connection to the forum" with the strongest presumption afforded to "[a] plaintiff who chooses to sue in his home forum" while a plaintiff suing in a forum where it has "minimal or no connections" receives "less deference." *In re Air Crash*, 946 F.3d at 613-14. And this relates to Defendants' argument, which AIDEA fails to refute, that deference to plaintiff's choice of forum and defendant's burden in showing that transfer is appropriate "are significantly diminished 'when the 'plaintiff['s] choice [of forum] has no *factual* nexus to the case,' and, where, as in this case, transfer is sought to the forum with which [the plaintiff] ha[s] substantial ties and where the subject matter of the lawsuit is connected to that

state."  Defs.' Mot. 13 (quoting *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996) (first two alterations in original) (citation and footnote omitted)).

AIDEA has no ties to the District of Columbia.  Its choice to sue in the District of Columbia is therefore entitled to minimal deference, particularly when it now seeks in the pending suit to revisit decisions on key issues it originally chose to litigate in the District of Alaska.

2.      The Remaining Private Interest Factors Favor Transfer

AIDEA suggests that media rollout and the announcement by the Secretary of the Interior prove that the lease cancellation decision arose in the District of Columbia.  *See* Pl.'s Opp'n 6-9. These arguments place form over substance and ignore the manner in which Interior, or any bureaucratic entity, makes decisions in the modern administrative state.

AIDEA contends that "that Secretary Haaland was in fact the decision-maker" for the lease cancellation decision based on attribution to her in a press release and her appearance at a media event announcing the decision, along with other matters.  Pl.'s Opp'n 6.  But a press release is not a decision.  *See Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, No. 3:18-CV-00029-SLG, 2019 WL 1976475, at *3 (D. Alaska Jan. 10, 2019).  Where plaintiffs and the subject matter of the lawsuit are located in the transferee forum, the location of headquarters for the overseeing agency and official signing the formal decision may be "too attenuated to create a meaningful factual nexus" to the District of Columbia, particularly when "any role played by officials in the District of Columbia is overshadowed by the fact that their decisions were based on work done by government employees in [Alaska]" and resulting effects would primarily be felt in Alaska.  *Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002).  The lease cancellation decision was signed by the Deputy Secretary

and the press release attributes the decision to Secretary Haaland because lease cancellation, like many agency actions taken by the Department of the Interior, ultimately inheres in the Secretary. But AIDEA's assumption that these facts define the agency's decision-making process is "a blinkered perspective" that "does not acknowledge the broader context of this dispute.  Although the final act transpired in [Defendants'] Washington, D.C. headquarters, the rest of the play was set elsewhere" and involved a dispute in Alaska "where the immediate effects of the [Deputy Secretary's] decision [will be] felt and where issues related to [that] decision continue to be litigated."  *Pac. Mar. Ass'n v. NLRB*, 905 F. Supp. 2d 55, 60 (D.D.C. 2012); *see also Ctr. for Env'tl Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 357 (D.D.C. 2014).

AIDEA next suggests that the Secretary's purported "personal involvement" deprived AIDEA of an opportunity to comment or seek review "under DOI's normal internal appeals process."  Pl.'s Opp'n 7-8.  But AIDEA fails to identify what the "normal" process is for commenting upon or seeking review of a lease cancellation decision – which is understandable because no such procedures are established by law.  AIDEA fails to explain how such theoretical processes would serve any legal or logical purpose when the invalidity of AIDEA's 2021 leases was apparent in light of *Liberty* and *Sovereign Iñupiat*.  And AIDEA's insinuation that a statement attributed to the Secretary "cast[s] a pall over the willingness of senior DOI leadership to ever implement the Tax Act's directive[s]," Pl.'s Opp'n 8, is even less credible, for the Alaska court has agreed, with Defendants' acknowledgment, that the Tax Act "specifies only the dates by which two lease sales must take place" and "DOI completed the first lease sale and currently is supplementing its environmental review" to facilitate the second lease sale and "'provid[e] for an oil and gas program on the Coastal Plain.'"  *AIDEA*, 2023 WL 5021555, at *14-15 (quoting the Tax Act § 20001(b)(2)(B)(iii)).

Finally, the remaining private interest factors do not alter the analysis.  AIDEA all but acknowledges this to be so.  *See* Pl.'s Opp'n 24-28.  AIDEA hints that merely alleging lease cancellation was "pretextual in nature" might necessitate that it seek discovery.  *Id*. at 24.  But any suggestion of pretext is rebutted above, and any effort to seek discovery is baseless "because this is an APA case, centering on a matter of statutory interpretation, that will likely be decided at summary judgment on the basis of the administrative record.  There is no reason to expect a trial, or witnesses, or the need for extra-record evidence."  *Wilderness Workshop*, 2023 WL 3879505, at *4.  AIDEA makes similarly baseless and imprecise assertions that "concession[s]" in Defendants' answer "may be sufficient for the Court to rule for Plaintiffs' and provide relief for AIDEA's due process claims."  Pl.'s Opp'n 25.  All that Defendants admitted was that AIDEA did not receive a chance to comment on a possible lease cancellation decision, but doing so would be irrelevant given that the Secretary has inherent authority to cancel leases void at their inception, particularly when multiple lawsuits are pending to assert claims already found to be valid by the Alaska court.  There will not be witnesses in this case (or the pending Alaska cases) and none of the additional private interest factors are significant in deciding whether to transfer venue.

## III.   <u>CONCLUSION</u>

For all these reasons and those provided in the Motion, the Court should grant the Motion and transfer this action to the District of Alaska.


Respectfully submitted this 23rd day of January 2024.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*
PAUL A. TURCKE (Idaho Bar # 4759)
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
(202) 532-5994
paul.turcke@usdoj.gov

*Counsel for Defendants*

*Of Counsel*:

MIKE GIERYIC
Office of the Regional Solicitor, Alaska Region
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508